IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Doreen Jones Norton, as Guardian <u>ad</u> <u>Litem</u> for Meagan Doreen Norton, a minor under the age of fourteen years, | ) ) ) ) | C/A No. 2:04-1244-18 |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORDER AND OPINION** |
| United States of America,[1] | ) ) ) | |
| Defendant. | ) ) | |

## I.  Background

On April 20, 2004, plaintiff Doreen Jones Norton ("plaintiff") filed a complaint with this court on behalf of her daughter Meagan Doreen Norton ("Meagan") for medical malpractice, alleging that Meagan's doctors had failed to use reasonable care in diagnosing a hip condition at or near in time to Meagan's birth.  On January 7, 2005, defendant United States of America ("defendant" or the "government") filed a motion to dismiss plaintiff's complaint on the grounds that this court lacked jurisdiction over the subject-matter of the case.  Plaintiff responded on January 25, 2005, but before the court could hold a hearing on the motion, the government filed a second motion to dismiss for improper venue and to change venue on February 25, 2005.  On March 16, 2005, plaintiff responded to the government's venue motions, and on March 23, 2005, the government

---

[1] The original defendant in this action was the Department of the Navy of the United States of America, but on July 12, 2004, this court granted the parties' stipulated motion to change the defendant to the United States of America.

replied.[2]  Because the original motion to dismiss involves important and intricate issues of Florida law, the court and the parties deemed it most prudent to address the venue questions first.  As a result, on April 6, 2005, the court heard arguments on the venue motions and now issues its ruling.

## II.  Facts

Plaintiff is the mother and guardian of the real party at interest, Meagan Doreen Norton.  Also the daughter of Lt. Scott Norton, USN, Meagan was born on March 3, 1999 at Pensacola Navy Hospital ("PNH") in Pensacola, Florida.  Meagan was a first-born female child birthed with a certain type of breech presentation[3] that plaintiff alleges to be known, when present with the other facts of Meagan's birth, to put Meagan at a very high risk of suffering from developmental dysplasia of the hip ("DDH").[4]  After her birth, Meagan remained under routine pediatric care at PNH for two years until her father was transferred to Charleston, South Carolina in April 2001.

At the age of approximately thirty months old, while being seen at the Charleston Navy Hospital ("CNH") for a prolapsed rectum, an x-ray coincidentally depicted Meagan's hips, revealing information that resulted in Meagan being diagnosed with bilateral DDH by the radiologist.  The Nortons were told about the diagnosis on September 13, 2001, and Meagan was referred by CNH to Pediatric Surgery at the

---

[2] The government also supplemented its venue motions on April 5, 2005 with deposition excerpts.

[3] The specific breech presentation was a frank buttocks-first breech presentation.

[4] DDH is a condition relating to the abnormal development of the hip socket (acetabulem) and the femoral heads which can cause instability and dislocation of the hips in addition to disfigurement.

Medical University of South Carolina ("MUSC").  She has undergone multiple surgeries to both hips with only limited success and has been told that further surgery is certain. Meagan walks with a waddling ataxic gait and is shorter than she would have been had her condition been corrected at an early age.

Plaintiff argues that early treatment is critical to the success rate of corrective procedures for Meagan's condition and alleges that had Meagan's doctors not been negligent in failing to adequately screen her for DDH, Meagan would not have suffered from the severe injury that her condition has caused her.  Pursuant to the Federal Tort Claims Act (the "FTCA"), plaintiff filed an administrative claim with PNH for $10,000,000 through the Naval Legal Service Office.  The Navy acknowledged receipt of the claim and the Standard Form 95 on September 12, 2003, within the federal period of limitations.  Plaintiff claims that no action was taken on her claim within six months of its filing with the agency, so she commenced this action on April 20, 2004.  On May 27, 2004, plaintiff received official notice from the Department of the Navy that her claim had been formally denied and that although suit had already been filed, the statute of limitations would not run until six (6) months from the date of the letter.

### III.   Legal analysis

On January 7, 2005, the government moved to dismiss plaintiff's complaint on the grounds that this court lacks jurisdiction over the subject-matter of this case.  After plaintiff responded on January 25, 2005, the government filed a second motion to dismiss for improper venue or, in the alternative, to change venue on February 25, 2005.  The government argues that venue is only proper where the plaintiff resides or where the acts

or omissions giving rise to the cause of action occurred and that both of those inquiries point to Florida.  In the alternative, the government argues that the case should be transferred to Florida for the convenience of the parties and witnesses.  On March 16, 2005, plaintiff responded that the government had waived any challenge to venue and, in any event, that she was not a resident of Florida but a resident of South Carolina; therefore, venue is proper in this court.  Plaintiff further argues that the convenience of the parties and witnesses favors the current venue.  On March 23, 2005, the government replied that it had not waived its right to challenge venue and, on April 5, 2005, supplemented its motions with deposition excerpts.  Each argument is addressed in turn.

### A.    Waiver

The government has moved to dismiss this case on the grounds that venue is improper and, in the alternative, to transfer venue for the convenience of the witnesses and the parties.  In its motion to dismiss, the government asserts that it is raising the venue issue for the first time "as a result of information provided by plaintiff on January 26, 2005."  (Mot. to Dismiss at 3.)  The government continues that up until this time, it has "defended the case under the presumption that <u>venue</u> lay properly in South Carolina **as the forum district where the plaintiff resides, not as the district where the alleged negligent acts complained of occurred**."  (Mot. to Dismiss at 4.  Emphasis in original.)

Plaintiff responds that the government has waived any venue challenges by not raising them with its original 12(b) motions or in its answer.  Specifically, plaintiff argues that the government had all of the evidence it now relies on at the time it answered the complaint and made its first 12(b) motion; therefore, it was required to make the

4

improper venue motion at one of those times.  The government replies that it denied

plaintiff was a citizen of South Carolina in its answer and demanded strict proof of that

fact; therefore its 12(b)(3) motion is not barred.

      Federal Rule of Civil Procedure 12(b) provides, in pertinent part:

> Every defense, in law or fact, to a claim for relief in any
> pleading, . . . shall be asserted in the responsive pleading
> thereto if one is required, except that the following
> defenses may at the option of the pleader be made by
> motion: (1) lack of jurisdiction over the subject matter, . . .
> (3) improper venue, . . . .  A motion making any of these
> defenses shall be made before pleading if a further pleading
> is permitted.

Fed R. Civ. P. 12(b).  Later in Rule 12, it is further instructed that

> If a party makes a motion under this rule but omits
> therefrom any defense or objection then available to the
> party which this rule permits to be raised by motion, the
> party shall not thereafter make a motion based on the
> defense or objection so omitted . . . .

Id. at 12(g).  Again in Rule 12, the language specifically addresses waiver and provides:

> A defense of . . . improper venue, . . . is waived (A) if
> omitted from a motion in the circumstances described in
> subdivision (g), or (B) if it is neither made by motion under
> this rule nor included in a responsive pleading or an
> amendment thereof permitted by Rule 15(a) to be made as a
> matter of course.

Id. at 12(h).

      Plaintiff argues that the government answered on June 28, 2004 and made a 12(b)

motion on January 7, 2005, both without raising the venue issue.  Furthermore, plaintiff

asserts that defendant knew of plaintiff's assigned residence in South Carolina, was in

possession of plaintiff's official Record of Residence form (which identified Florida as

his residence), and knew that plaintiff's vehicle was registered in Florida (because it had to identify his vehicle for access onto naval bases).  Plaintiff argues that, based on this knowledge, the improper venue motion was available to the government at the time of its answer and first 12(b) motion.  Without specifically articulating how it avoids the federal rules laid out above, it appears that the government relies on the clause in Rule 12(g) that limits its application to defenses "then available" to a party.  In other words, the government contends that the improper venue defense was not available to it because it was not aware of certain facts until plaintiff presented them in discovery in the form of a report from Dr. B. Perry Woodside, III.  Those facts include: 1) a statement that the Nortons are Florida residents for tax purposes, 2) the Nortons maintain Florida driver's licenses, 3) the Nortons maintain Florida vehicle registrations and vehicle tags on their automobiles, 4) Scott Norton lists Florida on his official Record of Residence form with the United States Navy, 5) the Nortons currently or previously owned real property in Florida, and 6) the Nortons are currently tenants of the United States Navy while temporarily stationed in South Carolina.

The point of contention between the parties rests with plaintiff's charge that the government possessed all of this information before discovery because it had Scott Norton's Navy records.  There is, however, some evidence relied on by the government that is not necessarily linked to the federal government, such as the driver's license evidence, but plaintiff does not address this evidence separately.  As the D.C. Circuit put it:

> There is . . . no basis for holding "the United States liable
> based upon the collective knowledge of its employees."

> One federal agency "should not be charged with knowledge of what another is doing simply because both are components of the same federal government." <u>J.A. Jones Constr. Co. v. United States</u>, 182 Ct. Cl. 615, 390 F.2d 886, 891 (Ct. Cl. 1968); <u>see also</u> <u>United States v. Currency Totalling $48,318.08</u>, 609 F.2d 210, 215 (5th Cir. 1980) (knowledge of customs agent not attributed to government because claimant could not prove that agent had a duty to reveal knowledge).

<u>Wyler v. Korean Air Lines Co.</u>, 289 U.S. App. D.C. 75 (D.C. Cir. 1991). This court agrees with the sentiment above and finds that the government cannot be held responsible, under these circumstances, for knowing everything about the Nortons that they had ever submitted to a federal agency, especially in the short time period allowed for an answer or 12(b) motion after a complaint is filed. As such, the improper venue defense was not waived by the government because it was not available until the government discovered the evidence tending to show that plaintiff could be considered a resident of Florida.

> **B.      Proper venue**

Because the court finds that the government has not waived its right to challenge venue, the next question is whether the District of South Carolina is a proper venue. The government argues that South Carolina is not a proper venue because plaintiff is a resident of Florida and because the events prompting the lawsuit occurred there. Plaintiff, on the other hand, argues that venue is proper in South Carolina because she is a resident of South Carolina.[5]

---

[5] While in some situations there could be an issue as to whether the parties are arguing over the residency of Doreen Norton, who does not appear to be the real party at interest, or her daughter Meagan Norton, who does appear to be the real party at interest,

7

"Any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title [28 U.S.C. § 1346] may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). The parties agree that the present suit falls under 28 U.S.C. § 1346(b); therefore, § 1402(b) governs proper venue in this instance. Likewise, the parties agree that the alleged omissions leading to this case occurred in Florida, so the only question left for debate is plaintiff's residency. Under federal law, "an individual's mere residence in a state is not enough for purposes of establishing the propriety of venue there. Rather, it is the individual's 'permanent' residence -- i.e., h[er] domicile -- that is the benchmark for determining proper venue." Manley v. Engram, 755 F.2d 1463, 1466 n.3 (11th Cir. 1985). Determination of residence in this sense of the word necessarily entails the finding of subjective intent, for "a person's domicile is that place where [s]he has h[er] true, fixed, and permanent home, and to which [s]he has the intention of returning in the future although [s]he may presently be absent therefrom." Id. (Internal citations omitted). Furthermore, determination of residence or domicile is a question of fact for the court to decide. 17-110 Moore's Federal Practice - Civil § 110.03 (citing Hill v. Gregory, 241 F.2d 612 (7th Cir. 1957)). Accordingly, plaintiff's residency turns on her subjective intent as gleaned from the evidence.

The court finds the evidence to show that plaintiff should be considered a resident of Florida. It is undisputed that plaintiff is officially a resident of Florida for tax

---

there is no evidence that the two would be different since Meagan is a dependent child of Doreen. As such, the distinction is not relevant here.

purposes.  She has a Florida driver's license (albeit with a South Carolina address listed on the license), a Florida vehicle registration, and Florida license tags.  It is true that Florida was the first state in which plaintiff's husband was stationed, and it is also true that South Carolina is his current assignment.  However, when plaintiff and her family lived in Florida, they owned a home; in South Carolina, they rent from the Navy.  In addition, on his official record of residence card with the Navy, plaintiff's husband lists Florida as his place of residence.  Plaintiff voted as a Florida resident in the 2004 Presidential election.

While plaintiff submits much evidence of her connections to South Carolina, i.e., that she was born in Chester, grew up in Great Falls, and attended college in Greenville, South Carolina, these connections are rendered less persuasive by the fact that she and her husband lived several places between her youth in South Carolina and her recent return as a result of her husband's duties.  Specifically, plaintiff and her husband lived in Illinois, Michigan, and Kentucky more recently than they lived in South Carolina, at least before this latest assignment in connection with the Navy.  Additionally, plaintiff submits that her parents' residence in South Carolina is more evidence of her own residency there, but the court does not find this fact to outweigh the evidence to the contrary.  In short, all of the objective evidence shows that plaintiff continues to be a resident of Florida, and the court finds in accordance with that evidence.

Because the court finds that plaintiff resides in Florida and because the parties agree that the actions and/or omissions complained of occurred in Florida, venue is improper in South Carolina.  Section 1406(a) of Title 28 of the United States Code

9

provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  In view of the government's acknowledgment that plaintiff may experience a statute of limitations hurdle if her case is dismissed, the court finds that the interest of justice is better served by transferring plaintiff's case to the Northern District of Florida.

**C.    Convenient forum**

Based on the above reasoning, it is unnecessary for the court to consider the government's motion under 28 U.S.C. § 1404.

**IV.    Conclusion**

It is therefore, **ORDERED**, for the foregoing reasons, that defendant's motion to transfer venue to the Northern District of Florida is **GRANTED**.

**AND IT IS SO ORDERED**.


s/ David C. Norton
_____
**David C. Norton**
**United States District Judge**


**April 27, 2005**
**Charleston, South Carolina**

10